## **Exhibit L**

(Verified Motion for Appointment of General Receiver (the "Receiver Motion"))

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SABAL PALM CONSULTING, LLC,

    Plaintiff,

vs.

ALPHA INTERNATIONAL, INC., J. LLOYD INTERNATIONAL, INC., J.K. MANUFACTURING CO., and J.K. PROPERTIES, LLC,

    Defendants.

Case No. 1:20-cv-00283

Hon. Janet T. Neff

Magistrate Judge Ray Kent

## EXPEDITED CONSIDERATION REQUESTED

## ORAL ARGUMENT REQUESTED

### VERIFIED MOTION
### FOR APPOINTMENT OF GENERAL RECEIVER

Plaintiff Sabal Palm Consulting, LLC ("**Sabal**" or "**Lender**"), by its attorneys, Dickinson Wright PLLC and Otterbourg P.C., respectfully requests entry of the proposed Order for Receiver attached as **Exhibit 1** appointing a general receiver over the assets and operations of Defendants Alpha International, Inc., J. Lloyd International, Inc., J.K. Manufacturing Co. and J.K. Properties, LC (collectively, the "**Defendants**").

As set forth in the accompanying Brief, the Court has authority to appoint a general receiver with broad powers under federal statutes and common law. Here, the appointment of a general receiver, and expedited consideration of this Motion, is necessary and proper to preserve and manage Defendants' assets, maintain the going concern value of Defendants' operations, protect and preserve Lender's collateral for sale, and prevent waste.

6075130.2

WHEREFORE, Sabal respectfully requests that the Court enter the proposed Order for Receiver attached as **Exhibit 1** without delay, grant the receiver broad powers including the power to assume custody and control over all of Defendants' assets and operations, to market and sell Defendants' assets (subject to Lender's right to credit bid) free and clear of liens, claims and interests (with such liens, claims and interests to transfer to the proceeds of sale for subsequent resolution by the Court of any priority or other inter-creditor disputes), grant the receiver all other powers specified in the proposed Order for Receiver, and grant such further relief as the Court deems just and equitable.

        Respectfully Submitted,

        DICKINSON WRIGHT PLLC

        By: /s/ Scott R. Knapp
        Scott R. Knapp (P61041)
        Daniel F. Gosch (P35495)
        Samantha A. Pattwell (P76564)
        200 Ottawa Ave. NW, Suite 1000
        Grand Rapids, Michigan 49503
        (616) 458-1300
        sknapp@dickinsonwright.com
        dgosch@dickinsonwright.com
        spattwell@dickinsonwright.com

        -and-

        OTTERBOURG P.C.

        By: /s/Andrew Kramer
        Andrew Kramer
        John Bougiamas
        230 Park Avenue
        New York, New York 10169
        (616) 458-1300
        akramer@otterbourg.com
        jbougiamas@otterbourg.com

        *Attorneys for Sabal Palm Consulting, LLC*
         *To be admitted Pro Hac Vice*

Dated: March 31, 2020

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SABAL PALM CONSULTING, LLC,

      Plaintiff,

vs.

ALPHA INTERNATIONAL, INC., J. LLOYD
INTERNATIONAL, INC., J.K.
MANUFACTURING CO., and J.K.
PROPERTIES, LLC,

      Defendants.

Case No. 1:20-cv-00283

Hon. Janet T. Neff

Magistrate Judge Ray Kent

## BRIEF IN SUPPORT OF VERIFIED MOTION
## FOR APPOINTMENT OF GENERAL RECEIVER

## ORAL ARGUMENT REQUESTED

6075130.2

# TABLE OF CONTENTS

Pages

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 2

    A. Loans To Defendants ................................................................................................2

    B. Defendants' Defaults ................................................................................................3

    C. Efforts To Preserve Defendants' Value And The Need For A General Receiver ....................................................................................................................3

III. ARGUMENT ....................................................................................................................... 6

    A. The Court Has Authority To Appoint A General Receiver With Broad Powers Under Federal Statutes And Common Law. ...............................................6

    B. Appointment Of A General Receiver Is Necessary To Preserve Defendants' Value. ....................................................................................................8

    C. Receivership Over The Defendants Should Be Granted In Light Of Defendants' Agreement To The Receivership. ........................................................9

IV. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

Pages

**Cases**

*Agstar Fin. Servs., PCA v. Vreba-Hoff Dairy Dev., LLC*, No. 3:10–cv–00129, 2010 WL 7926233 (N.D. Ohio July 13, 2010) .................................................................................. 7

*Britton v. Green*, 325 F.2d 377 (10th Cir. 1963) ........................................................................ 9

*Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837 (9th Cir. 2009) ........................................ 5

*Fed. Nat'l Mortg. Ass'n v. Mapletree Inv'rs L.P.*, No. 10–cv–10381, 2010 WL 1753112 (E.D. Mich. April 30, 2010) .................................................................................................. 5

*Fed. Nat'l Mortg. Ass'n v. Maple Creek Gardens, LLC*, No. 09–14703, 2010 WL 374033 (E.D. Mich. Jan. 25, 2010) ................................................................................................... 9

*John T. Callahan & Sons, Inc. v. Dykeman Elec. Co., Inc.*, 266 F.Supp.2d 208 (D. Mass. 2003) ................................................................................................................................... 7

*Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543 (6th Cir. 2006) ...................................... 6, 7

*Norwest Bank Wisconsin v. The Malachi Corp., Inc.*, No. 99–cv–40146, 2009 WL 4947753 (E.D. Mich. Dec. 14, 2009) .................................................................................... 6

*Quilling v. Trade Partners, Inc.*, 572 F.3d 293 (6th Cir. 2009) ................................................... 6

*SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657 (6th Cir. 2001) ................................. 6

*SEC v. Hardy*, 803 F.2d 1034 (9th Cir. 1986) ............................................................................ 5

*Van Huffel v. Harkelrode*, 284 U.S. 225 (1931) ......................................................................... 7

**Statutes**

28 U.S.C. § 2001 ........................................................................................................................ 6

28 U.S.C. § 754 ...................................................................................................................... 5, 6

28 U.S.C. § 959(b) ..................................................................................................................... 5

## I.   INTRODUCTION

As set forth in the Complaint dated March 27, 2020, this action arises out of the defaults of Defendants Alpha International, Inc. ("**Alpha**"), J. Lloyd International, Inc. ("**J. Lloyd**"), J.K. Manufacturing Co. ("**Manufacturing**") and J.K. Properties, LC ("**Properties**" and together with Alpha, J. Lloyd and Manufacturing, collectively, the "**Defendants**" or "**Borrower Defendants**") under the Loan Documents (defined below). The Defendants' obligations to Plaintiff Sabal Palm Consulting, LLC ("**Plaintiff**", "**Lender**" or "**Sabal**") under the Loan Documents are secured by, among other things, the Defendants' real and personal property. As a result of defaults by the Defendants under the Loan Documents, Lender is entitled to foreclose the liens and security interests described in the Loan Documents, and to monetary relief. Moreover, as a result of, among other things, the attempts by the Defendants' principal and guarantor, Jody Keener, to sell the Defendants' assets without permission of the Lender, and the accompanying need for Lender to halt the dissipation of the Defendants' property and to preserve and protect the proceeds of any liquidation of the Defendants' property, the Plaintiff respectfully requests that this Court appoint a receiver under the provisions of the Loan Documents and applicable law. As detailed below, the Court has authority to grant the relief requested in the Motion under Federal Rule of Civil Procedure 66, federal statutes and common law, and this case presents the appropriate circumstances for appointing a general receiver with broad powers as requested.

6075130.2

## II. STATEMENT OF FACTS

The facts in this matter are outlined in detail in the Complaint and are supported by the Declaration of Eric S. Rosen dated March 27, 2020, attached here as **Exhibit 2.** Attached to the Complaint are relevant exhibits, which are incorporated into this Motion by reference.[1]

### A. Loans To Defendants

Pursuant to the Loan Documents, Lender holds a properly perfected first-priority security interest in and lien upon substantially all of each of the Defendants' assets, both real and personal, including without limitation, inventory, machinery, equipment, tools, dies, molds, trademarks and real estate (collectively, the "**Collateral**"). As of March 1, 2020, Borrower Defendants owed Lender pursuant to the Loan Documents the original principal amount of $5,826,914.19, plus accrued but unpaid interest in the amount of $781,280.31 for a total of $6,608,194.50. Interest continues to accrue in accordance with the terms and conditions of the Loan Documents. In addition to the above subtotal, Borrower Defendants owe Lender additional fees and costs (including, without limitation, Lender's professional fees for this action), all of which continue to accrue pursuant to the Loan Documents. All of the foregoing amounts and all amounts described and defined in the Loan Agreement as the "Obligations" are referred to collectively herein as the "**Obligations**". The Loan Documents provide that each of the Defendants are jointly and severally obligated on account of all of the Obligations.

---

[1] For brevity, these exhibits are not described in detail in this Motion. Such exhibits include the underlying Loan Documents described in detail in the Complaint, and the Default Notices served upon the Defendants.

2

6075130.2

B.  **Defendants' Defaults**[2]

Defendants are in default under the Loan Documents on account of the "Events of Default" described in the Default Notices attached to the Complaint as Exhibits F1-F3. See Complaint, ECF No. 1, PageID.163-171. In addition to the defaults specified in each of the Default Notices, the following additional defaults have occurred and are continuing:

a. The Borrower Defendants have advised Lender that they are out of cash and have no ability to pay any bills (including payroll, water and electric bills), in violation of Section 2(g), 3(f) and 3(g) of the Loan Agreement;

b. The Maturity Date of March 18, 2020 has passed without payment of the Obligations due Lender in violation of Section 1(i) of the Loan Agreement;

c. Mr. Keener, the Borrower Defendants' principal, recently offered to sell specific assets of the Defendants without the knowledge or consent of the Lender, in violation of Section 4(b) of the Loan Agreement; and

d. Despite acceleration and due demand, the Borrower Defendants have failed to otherwise pay the Obligations due and owing Lender.

None of the Events of Default have been waived by Lender, and each are ongoing and continuing as of the date hereof.

C.  **Efforts To Preserve Defendants' Value And The Need For A General Receiver**

The Borrower Defendants manufacture and sell children's toys. The financing provided by Lender was intended to provide Borrower Defendants with financing to avoid the cessation of operations as a result of the personal Chapter 7 proceeding of Borrower Defendants' principal, Mr. Keener. As set forth in the Notices of Default, however, the Borrower Defendants have been

---

[2] Plaintiff notes at the outset that Defendants' defaults occurred long before the onset of the

3

6075130.2

in default since shortly after the financing occurred. Despite repeated efforts by the Lender to reach alternative financial arrangements with the Borrower Defendants, the Borrower Defendants have continually breached numerous terms and conditions set forth in the Loan Documents. As a result, Lender has declined to make additional advances of credit to the Borrower Defendants.

As a result of the Borrower Defendants' breaches, the Lender delivered to the Borrower Defendants the Default Notices. Notwithstanding the Default Notices, and in the exercise of its sole and absolute discretion in accordance with the Loan Documents, Lender has provided additional discretionary protective advances to Borrower Defendants in excess of $380,000 based upon the understanding that Borrower Defendants were attempting first to raise capital and thereafter to sell the assets in accordance with the provisions of the Loan Documents in order to repay the Obligations due Lender. The Borrower Defendants' actions in this regard have been unsuccessful and the Borrower Defendants are, once again, out of cash. Lender is unwilling to consider additional discretionary loans to the Borrower Defendants unless a receiver has been appointed as requested by Lender.

In addition, the following matters are of significant concern to Lender:

a. <u>Efforts to Sell Collateral without Notice</u>. Mr. Keener has attempted to sell certain of the Borrower Defendants' valuable assets without the knowledge or consent of the Lender (as required by the Loan Documents).

b. <u>Diverted Assets</u>. Mr. Keener has previously used proceeds designated for corporate purposes to pay personal expenses, such as doctor bills, school tuition and divorce lawyers. Despite repeated requests, Borrower Defendants have consistently failed to provide Lender with any reporting and Lender has had no basis to verify that the proceeds of advances have been spent for the stated purposes.

COVID-19 pandemic.

4

6075130.2

  c. <u>Books and Records</u>. Based on Mr. Keener's prior conduct, Lender is extremely concerned that Mr. Keener will remove and/or destroy books and records, once he receives notice of the Motion to appoint a Receiver.

As set forth in each of the Michigan Mortgage and Iowa Mortgage, one of the Lender's remedies is foreclosure and, in connection with such foreclosure, the Borrower Defendants have consented to the appointment of a receiver. *See* ¶ 6 of each of the Michigan and Iowa Mortgages, attached to the Complaint as Exhibits C-2 and C-3; Complaint, ECF No. 1, PageID.86 and PageID.103 ("the Holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver"). In addition, as described herein, cause in any event exists to appoint a receiver for all of the Defendants' assets.

Under the facts presented, in the absence of a receiver, Defendants' assets are in danger of immediate and irreparable damage, loss and waste, and neither Lender nor Defendants will be able to maximize the value of Defendants' operations in a controlled and orderly fashion. Lender is willing to consider additional loans to the Borrower Defendants to preserve the going concern value of Defendants' operations, and protect and preserve the Collateral, but only if a receiver has been appointed as requested by Lender.

As a consequence of the foregoing, appointment of a receiver is in the best interests of the Lender, the Defendants' creditors and, ultimately, the Defendants. Lender has requested that the Court appoint Gene R. Kohut, a Managing Director of the firm of Conway MacKenzie, Inc. to serve as the Receiver for the Defendants. Lender has no connection with Mr. Kohut or Conway MacKenzie, Inc. Lender believes, based upon the affidavit of Mr. Kohut, that Mr. Kohut and Conway Mackenzie, Inc. have no connection with the Defendants. Mr. Kohut is well qualified to serve as the Receiver for the Defendants' personal and real property. Mr. Kohut specializes in the operation, management and disposition of troubled businesses in numerous industries, and has significant experience as a receiver. See Complaint, ECF No. 1; PageID.172.

5

6075130.2

### III. ARGUMENT

#### A. The Court Has Authority To Appoint A General Receiver With Broad Powers Under Federal Statutes And Common Law.

The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). In a federal civil action, such as this one, based on diversity of citizenship, a request for the appointment of a general receiver is governed by federal law. *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009); *Fed. Nat'l Mortg. Ass'n. v. Mapletree Inv'rs L.P.*, No. 10–cv–10381, 2010 WL 1753112, at *2 (E.D. Mich. April 30, 2010).

Several federal statutes describe the enormous breadth of power of a federally-appointed receiver. 28 U.S.C. § 754 provides:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, **be vested with complete jurisdiction and control of all such property with the right to take possession thereof.**
>
> **[The receiver] shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.**

28 U.S.C. § 754 (emphasis added). 28 U.S.C. § 959, in turn, provides in relevant part:

> Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, **shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.**

28 U.S.C. § 959(b) (emphasis added). In addition, 28 U.S.C. §§ 2001 and 2004 together provide a federally-appointed receiver the power to sell both real and personal property of a receivership

estate on "such terms and conditions as the court directs," either at a public or private sale. *See* 28 U.S.C. § 2001.

"In a receivership proceeding, the district court has 'broad powers and wide discretion' in crafting relief." *Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 298 (6th Cir. 2009) (quoting *SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 668 (6th Cir. 2001)). In addition to the powers expressly set forth by statute, the courts have repeatedly recognized a federally-appointed receiver's broad powers under federal common law and equity:

> In receivership cases falling within federal court jurisdiction, the federal courts exercise the traditional common-law powers of equity. *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). . . . "A district court has broad powers in fashioning relief in an equity receivership proceeding." [*Id.*] "Once assets are placed in a receivership, a district court's equitable purpose demands that the court be able to exercise control over claims brought against those assets..." *Id.*

*Norwest Bank Wisconsin v. The Malachi Corp., Inc.*, No. 99–cv–40146, 2009 WL 4947753, at *2 (E.D. Mich. Dec. 14, 2009).

The Sixth Circuit has recognized that this Court's equity powers include the power to stay all litigation against the receiver, the entities in receivership, and their assets, and to require that all disputes involving the same be resolved in this Court. *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551-53 (6th Cir. 2006) ("The receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of that court is first obtained.").

In addition to the powers set forth above, federal common law has long recognized the power of a federally-appointed receiver to sell both real and personal property of a receivership estate free and clear of all liens, claims and interests (with such liens, claims and interests to transfer to the proceeds of sale for subsequent resolution by the courts of any priority or inter-creditor disputes). *See Van Huffel v. Harkelrode*, 284 U.S. 225, 227 (1931); *John T. Callahan &*

7

*Sons, Inc. v. Dykeman Elec. Co., Inc.*, 266 F.Supp.2d 208, 222 (D. Mass. 2003) (allowing receivership property to be sold free and clear of liens in a private sale); *see also Agstar Fin. Servs., PCA v. Vreba-Hoff Dairy Dev., LLC*, No. 3:10–cv–00129, 2010 WL 792623, at *1 (N.D. Ohio July 13, 2010) (ordering sale of receivership property free and clear of all liens, claims, and encumbrances and any right of redemption). Accordingly, this Court has ample authority to enter the proposed Order for Receiver.

### B. Appointment Of A General Receiver Is Necessary To Preserve Defendants' Value.

In this case, the Borrower Defendants have taken a number of actions all to the detriment of the Lender and all creditors including (a) efforts to sell Collateral without notice to Lender; (b) diversion of assets by Borrower Defendants to Mr. Keener to pay personal expenses, such as doctor bills, school tuition and divorce lawyers; and (c) Borrower Defendants consistent failure to provide Lender with any reporting. In addition, based on Mr. Keener's prior conduct, Lender is extremely concerned that Mr. Keener will remove and/or destroy books and records, once he receives notice of the Motion to appoint a Receiver. This constitutes a strong basis for the appointment of a receiver in this case. Moreover, receivership is particularly important in this case because Defendants' real and personal property assets are located in multiple states (Michigan and Iowa), and no state court will have the comparable broad jurisdiction to provide the comprehensive relief that this Court can provide by overseeing the receivership.

Here, the terms of the proposed Order for Receiver are properly designed and crafted so as to provide the receiver those powers necessary to preserve and maximize the value of the Defendants' assets and the Collateral. Those powers expressly include, but are not limited to, the power to (a) manage the business and affairs of the Defendants; (b) to negotiate and enter into contracts and/or agreements on behalf of the Defendants; (c) to deal with appropriate federal,

8

state, and local governmental authorities on behalf of the Defendants; (d) to employ, retain, supervise, and terminate such agents, consultants, representatives, and employees (including without limitation accountants, investment bankers and auctioneers) as are necessary, after consultation with Lender; (e) to market, sell or otherwise dispose of some or all of the Defendants' assets subject to Lender's right to credit bid; (f) to collect and receive all income, earnings, revenues, rents, profits, and other monies which may arise from the operation, sale, lease, or other use of the Defendants' assets; and (g) to perform such other duties as are necessary to administer the receivership. Accordingly, the Court should enter the Order for Receiver.

### C. Receivership Over The Defendants Should Be Granted In Light Of Defendants' Agreement To The Receivership.

As set forth in each of the Michigan Mortgage and Iowa Mortgage, one of the Lender's remedies is foreclosure and, in connection with such foreclosure, the Borrower Defendants have consented to the appointment of a receiver. *See* ¶ 6 of each of the Michigan and Iowa Mortgages ("the Holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver").

Many courts have held that a commercial borrower's consent to the appointment of a receiver provides sufficient grounds for a federal court to appoint a receiver. *See, e.g., Fed. Nat'l Mortg. Ass'n v. Maple Creek Gardens, LLC*, No. 09–14703, 2010 WL 374033, at *3 (E.D. Mich. Jan. 25, 2010) (mortgagor's agreement to the appointment of a receiver is alone sufficient to conclude that mortgagee is entitled to such an appointment); *Britton v. Green*, 325 F.2d 377, 382 (10th Cir. 1963) ("By the terms of the mortgage, the mortgagor expressly agreed that in the event of a foreclosure suit, the mortgagee is entitled, "as a matter of right," to the appointment of a Receiver . . . ").

9

6075130.2

Case 1:20-cv-02830-JPO-RSR  Document 28-1  Filed 04/15/20  Page 17 of 18
Case 1:20-cv-10283-TSR  Doc No. 7  PageID#: 108  Filed 04/23/20  Page 17 of 18

Here, in addition to the equitable grounds and practical necessity of appointing a receiver as set forth above (which will best preserve the value of the Defendants' assets for the benefit of Defendants' creditors, employees, and customers), appointment of a receiver is appropriate because Defendants have agreed to appointment of a receiver. Accordingly, the Court should, respectfully, enter the proposed Order for Receiver without delay.

## IV. CONCLUSION

For the foregoing reasons, Sabal respectfully requests that the Court enter the proposed Order for Receiver attached as **Exhibit 1** without delay, grant the receiver broad powers, including the power to assume custody and control over all of the Defendants' assets and operations, to market and sell the Defendants' assets (subject to Lender's right to credit bid) free and clear of liens, claims and interests (with such liens, claims and interests to transfer to the proceeds of sale for subsequent resolution by the Court of any priority or other inter-creditor disputes), grant the receiver all other powers specified in the proposed Order for Receiver, and grant such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

DICKINSON WRIGHT PLLC

By: /s/ Scott R. Knapp
Scott R. Knapp (P61041)
Daniel F. Gosch (P35495)
Samantha A. Pattwell (P76564)
200 Ottawa Ave. NW, Suite 1000
Grand Rapids, Michigan 49503
(616) 458-1300
sknapp@dickinsonwright.com
dgosch@dickinsonwright.com
spattwell@dickinsonwright.com

-and-

10

OTTERBOURG P.C.

By: /s/Andrew Kramer
Andrew Kramer
John Bougiamas
230 Park Avenue
New York, New York 10169
(616) 458-1300
akramer@otterbourg.com
jbougiamas@otterbourg.com
*Attorneys for Sabal Palm Consulting, LLC*
  *To be admitted Pro Hac Vice*

Dated: March 31, 2020

## DECLARATION

I declare under penalty of perjury that the factual information provided in the foregoing motion and brief is true and correct to the best of my knowledge, information and belief.

By: s/ Eric S. Rosen
Eric S. Rosen
Managing Member
Sabal Palm Consulting, LLC

Dated: March 31, 2020

11

6075130.2