## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONTINENTAL PLANTS GROUP, LLC. | |
| Plaintiff, | CASE NO.  21-cv-8677 |
| v. | |
| ALPHA INTERNATIONAL, INC., | **ORAL ARGUMENT REQUESTED** |
| J. LLOYD INTERNATIONAL, INC., | |
| J. K. MANUFACTURING CO., and | |
| J. K. PROPERTIES, LC. | |
| Defendants. | |

**REPLY IN FURTHER SUPPORT OF PLAINTIFF
CONTINENTAL PLANT GROUP, LLC's
<u>MOTION FOR SUMMARY JUDGMENT</u>**

SARACHEK LAW FIRM
670 White Plains Road #PH
Scarsdale, New York 10583
Telephone: (646) 517-5420
zachary@saracheklawfirm.com
*Attorneys for Plaintiff*

## <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ............................................................................................................. ii

PRELIMINARY STATEMENT .................................................................................................... 1

I.      ARGUMENT IN REPLY .................................................................................................. 1

    a.   On June 27, 2018, Jody Keener Had Actual Authority to Sign the Agreement, as Granted by the Bankruptcy Court ............................................................................................................. 2

    b.   Jody Keener Had Apparent Authorization to Sign the Agreement, Based on the Actions and Representations of Defendants and their Counsel ....................................................................... 4

    c.   Defendants Ratified the Agreement Following the Dismissal of the Keener Bankruptcy ..... 5

    d.   Quasi-Estoppel Bars Defendant AII From Adopting a Factual Position that is Contrary to a Position Previously Taken on its Tax Return .............................................................................. 7

    e.   Equitable Estoppel Bars Defendants from Asserting the Lack of Authority Defense ............ 7

    f.   Under New York Law, Having Directly Benefitted from the Agreement, Defendants Cannot Avail of Lack of Authority as an Affirmative Defense ............................................................... 9

    g.   Under New York Law, the Subjective Intent of the Parties is Irrelevant When Examining an Unambiguous Contract ............................................................................................................ 10

II.    CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

### CASES

*Bank of N. Am. v. Shapiro,* 31 A.D.2d 465, 298 N.Y.S.2d 399, 401 (1st Dep't 1969) ................ 9

*Breen Air Freight, Ltd. v. Air Cargo, Inc*., 470 F.2d 767, 773 (2d Cir.1972) ............................ 5

*Chimart Assocs. v. Paul,* 66 N.Y.2d 570, 572, 498 N.Y.S.2d 344, 489 N.E.2d 231
(1986) ............................................................................................................................. 10

*DePetris & Bachrach, LLP v. Srour,* 71 A.D.3d 460, 462, 898 N.Y.S.2d 4, 6 (2010) ............... 8

*Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780
N.E.2d 166 (2002) .......................................................................................................... 10

*Herbert Const. Co. v. Cont'l Ins. Co.*, 931 F.2d 989, 993–94 (2d Cir. 1991) ............................ 4

*HOP Energy, L.L.C. v. Loc. 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012).................. 10

*In re Lehman Bros. Holdings Inc.,* 541 B.R. 551, 572 (S.D.N.Y. 2015) .................................... 6

*Mahoney–Buntzman v. Buntzman*, 12 N.Y.3d 415, 422, 881 N.Y.S.2d 369, 909
N.E.2d 62 (N.Y.2009) ...................................................................................................... 7

*Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 704 F. Supp. 2d 177, 193
(E.D.N.Y. 2010) ............................................................................................................... 7

*Rodonich v. House Wreckers Union Loc. 95 of Laborers' Int'l Union*, 817 F.2d 967,
973 (2d Cir. 1987) ............................................................................................................ 5

*Ross Univ. Sch. of Med., Ltd. v. Brooklyn-Queens Health Care, Inc*., No. 09-CV-
1410 KAM, 2012 WL 6091570, at *15 (E.D.N.Y. Dec. 7, 2012) ...................................... 9

*Simmons v. Burlington*, C.R. & N.R. Co., 159 U.S. 278, 291–92, 16 S. Ct. 1, 6, 40
L. Ed. 150 (1895) ............................................................................................................. 7

*Special Event Entertainment v. Rockefeller Ctr.*, 458 F.Supp. 72, 76
(S.D.N.Y.1978) ................................................................................................................ 8

*Transmarittina Sarda Italnavi Flotte Ruiniti S.p.A. v. Foremost Ins. Co*., 482 F.
Supp. 110, 116 (S.D.N.Y. 1979) ...................................................................................... 6

*Univ. of Minn. v. Agbo,* 176 Misc.2d 95, 673 N.Y.S.2d 812, 813 (2d Dep't 1998).................... 9

*VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir.2001) .................................... 6

*Woodard v. Southampton Fed. Sav. & Loan Ass'n,* 161 N.Y.S.2d 522, 526
(N.Y.Sup.Ct.1957) ........................................................................................................... 9

### STATUTES

26 U.S.C. § 6065 ................................................................................................................... 7

### TREATISES

Restatement (Third) of Agency § 7.01 [2006] ........................................................................ 8

Restatement of Agency 2d ¶¶ 91, 93–100 ............................................................................. 5

## PRELIMINARY STATEMENT

Defendants would rather this Court believe that their principal Jody Keener defrauded Plaintiff by misrepresenting his authority, instead of the simpler, well documented breach of contract claim set forth in the Complaint.  Defendants' "Brief in Support of Resistance to Plaintiff's [Motion]," ("Defs.' Opp.") with its singular focus on Keener's lack of authority to bind his own companies, fails to defeat Plaintiff's Motion for two reasons:  firstly, because Defendants' *ex post facto* attempts to show that the Agreement was not one of the "Loan Documents" authorized by the Bankruptcy Court are both implausible and not supported by any evidence on the record, and secondly, because, under New York law, it does not matter one way or the other if Keener was explicitly authorized to sign the Agreement.  Both of these same points were argued in opposition to Defendants' Motion for Summary Judgment, which also focused exclusively on the issue of Keener's authority to sign the Agreement. (Doc. #34).

## I.   ARGUMENT IN REPLY[1]

The Parties agree that there are no genuine disputes as to material facts of the instant case[2]. Defendants have filed their "Reply to Plaintiff's Statement of Undisputed Facts" ("Defs.' CSOF," Doc. #38) as a counterstatement to Plaintiff's Statement of Undisputed Facts ("SOF," Doc. #27). That counterstatement corroborates each and every material fact as presented by Plaintiff in the Motion.   For the few facts that Defendants deny, the objections are incoherent, and the denied facts are non-material.  *E.g.,* Def.'s CSOF ¶¶ 6, 17.  The main point of contention, whether Mr. Keener had authority to sign the Agreement, and whether that even matters, are questions of law that will be discussed *infra.*

---

[1] The Argument section is largely copied from Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Doc. #34 at 11-20).

[2] Defs.' Motion for Summary Judgment (Doc. #30 ¶ 1). *Also*  Defs.' Brief in Supp. of Mot. for Summary Judgment at 3 ("What Plaintiff has presented as an agreement is an *ultra vires* action that fails as a matter of law.")

### a. On June 27, 2018, Jody Keener Had Actual Authority to Sign the Agreement, as Granted by the Bankruptcy Court

The Agreement was one of the Loan Documents that was explicitly authorized by the Bankruptcy Court.    Through the Interim Order entered by on June 26, 2018, it was "ORDERED, DECREED, AND ADJUDGED:… [that] Debtor [Jody Keener] is authorized and empowered as an officer or manager of each of the [Defendants], to execute and deliver each of the Loan Documents."  SOF ¶¶ 20-21. *See also* the Interim Order, *generally*, Doc. #28-5.   The term "Loan Documents" is defined nowhere in the Interim Order.  *Id.*  In the Borrowing Motion, Keener's counsel defines "Loan Documents" somewhat circularly as "loan documents, notes, security documents, and mortgages (the "Loan Documents").  SOF ¶ 20.  *See also* Borrowing Motion at 3, Doc. #28-4.   In the main Loan Document, called the "Term Loan Agreement," (the "Loan Agreement") the term "Loan Documents" is defined expansively:

> "Loan Documents" shall mean, collectively, (i) this Agreement, (ii) the Term Note, (iii) the Security Documents, (iv) each Guarantee with respect to the Obligations and (v) **all agreements, documents and/or instruments at any time executed in connection with or related to any of the foregoing**, in each instance, as amended." ASOF[3] ¶ 16, emphasis added.

Clearly the Agreement, which was signed simultaneously with the Loan Agreement and relates to the loan, falls in the last broad category.  The Agreement itself makes explicit reference to this definition, declaring that the "capitalized terms used herein shall have the meanings assigned to them in the Loan Agreement."  Agreement at 1.

In their Memorandum of Law in Opposition to the Motion (the "Opposition"), Defendants represent, bizarrely, that the Agreement was "expressly held back by Plaintiff [from the Bankruptcy Court]"  Opp. at 4.  Yet, it was Mr. Keener's counsel Robert Gainer who managed the entire process of getting approval for the Loan Documents from the Bankruptcy Court!  Plaintiff's

---

[3] ASOF refers to Pl's Counterstatement and Additional Statement of Undisputed Material Facts, filed in opposition to Defs.' Motion for Summary Judgment, Doc. #35.

principal Reid Krakower is a non-attorney residing in rural Vermont who knows nothing about bankruptcy law.  ASOF ¶ 15.  He was not in a position to withhold anything from, or present anything to, the Bankruptcy Court.  None of the evidence that Defendants cite to has anything to do with the assertion that Plaintiff "expressly held back" the Agreement.[4]   Reviewing the bankruptcy docket, it is clear that <u>none</u> of the loan documents were ever presented by Gainer to the Bankruptcy Court.  Doc. #33-1.  The only representations made to the Bankruptcy Court on the loan terms were through Gainer's Borrowing Motion, which synthesizes the complex loan terms into a few paragraphs.  Borrowing Motion at 3, Doc. #28-4.  That's because the Trustee and the Bankruptcy Court were singularly focused on the money.  Plaintiff's work ultimately resulted in Keener's bankruptcy estate getting that money, enough to repay his creditors in full.  SOF ¶ 17.

On the day following the entry of the Interim Order, Defendants' own corporate counsel Kevin Collins, arranged for Keener to execute 24 separate instruments, in Collins' office.  SOF ¶ 26.  Collins subsequently sent the 24 executed documents to Sabal Palm's attorney in New York, with a cover letter describing the contents as the "Loan Documents."  SOF ¶¶ 26-27[5].  One of those documents, the Agreement, is identified in Collins' cover letter as "19. Compensation arrangements letter-signed."  SOF ¶ 38.  Clearly, therefore, Defendants' prior counsel understood the Agreement to be one of the "Loan Documents."  So did Keener himself.  ASOF ¶ 17.  All of the documents were signed in the same sitting and forwarded under the same cover, immediately following entry of the Interim Order.   The very fact that Keener signed the Agreement, on the advice of Defendant's counsel, suggests that both men understood that he had authority to do so.

---

[4] The email presented in Defendants' Exhibit F refers to an unrelated document - the Trademark Side Letter.  Krakower asks Defendants' attorneys if that document should be presented to the Chapter 7 Trustee.

[5] Defendants deny that the 24 instruments are Loan Documents, despite this term appearing in the subject line of Collins's cover letter that accompanied those documents via courier.  Defs.' CSOF ¶¶ 26-27, Responses.  Defendants are inconsistent as to which documents they assert are among the authorized "Loan Documents."  They sometimes assert that the "Trademark Side Letter to Loan Agreement" and the Agreement were, alone among the 24 instruments, not "Loan Documents" *Id.* (presumably the other 22 documents are?).  At another moment, Defendants also assert that the Paver Business Side Letter to Loan Agreement also was not a "Loan Document" *Id.* ¶ 35, Response.

Later, Keener himself, in a deposition for these proceedings, reviewed Collins' list of 24 documents and said that he understood those to be the "loan documents." ASOF ¶ 17. He stated of the cover letter and executed documents, "I guess this would all be considered a loan document package. So there's [sic] 24 items on the list." *Id.* Kenner asserts to this day that he had authority to sign the Agreement. ASOF ¶ 18.

### b. *Jody Keener Had Apparent Authorization to Sign the Agreement, Based on the Actions and Representations of Defendants and their Counsel*

Even if this Court were inclined to rule that Keener did not have actual authority to execute the Agreement, it is clear that he had apparent authority under New York law. "To recover on [the theory of apparent authority,] the third party must establish two facts: (1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question, and (2) the third party reasonably relied on the representations of the agent." *Herbert Const. Co. v. Cont'l Ins. Co.*, 931 F.2d 989, 993–94 (2d Cir. 1991) (citations and quotes omitted). Here, the Defendants were the principals to the Agreement. They were certainly responsible for giving Plaintiff the appearance of authority because they allowed their agent Jody Keener and their attorney Kevin Collins to include the Agreement in a package of 24 executed instruments that he called Loan Documents. SOF ¶¶ 26-27, 35-36. Those instruments were executed by Defendants' sole owner, Jody Keener, the day after the Bankruptcy Court authorized Keener to sign the "Loan Documents." *Id.* In their Motion, Defendants offer no proof that the Trustee, who they say controlled Defendants at the relevant time, ever objected to the Borrowing Motion or to the proposed loan. Defendants then proceeded to make partial payment of the fee owed under the Agreement in the amount of $40,000. SOF ¶¶ 28, 43. If Keener had no authority to sign the Agreement, why did he sign it in the first place? Why did he then pay the first installment? It defies logic, unless we recognize that Defendants only dreamed up their lack of authority defense more than three years later, when it was asserted in generic form in their answer to the Complaint.

The second factor of the test is also easily established.   The third party (Plaintiff) reasonably relied on the representations of the agent (Jody Keener).   Plaintiff was the only party not represented by counsel when it executed the Agreement.   Clearly, it was reasonable for Plaintiff to rely on Keener's representation that he was authorized to execute the Agreement.   After all, the Defendants were all wholly owned entities – who else would possibly sign?  It is clear from his deposition that Plaintiff's principal Reid Krakower did not understand that Keener needed approval of the Bankruptcy Court to sign the Agreement.  ASOF ¶ 15.  Both Plaintiff and lender Sabal Palm all were made to understand that that authority was granted through the Interim Order entered the day before the Agreement was executed.   Why should Krakower question the judgment of three separate law firms – Keener's, Defendants' and Sabal Palm's – that Defendants were authorized, through Keener, to proceed with the loan?    With both factors met, Plaintiff is entitled to recover on the Agreement under New York law under the theory of apparent authority, irrespective of whether the Bankruptcy Court granted Keener actual authority.

### c.  *Defendants Ratified the Agreement Following the Dismissal of the Keener Bankruptcy*

Defendants did nothing following the execution of the Agreement to suggest that they intended to repudiate that Agreement for (Keener's) lack of authority.   On the contrary, Defendants took multiple affirmative actions to ratify that Agreement, even after the Keener Bankruptcy was long dismissed.    In New York, "ratification can only occur when the principal, having knowledge of the material facts involved in a transaction, evidences an intention to ratify it." *Rodonich v. House Wreckers Union Loc. 95 of Laborers' Int'l Union*, 817 F.2d 967, 973 (2d Cir. 1987) citing *Breen Air Freight, Ltd. v. Air Cargo, Inc*., 470 F.2d 767, 773 (2d Cir.1972), cert. denied, 411 U.S. 932, 93 S.Ct. 1901 and Restatement of Agency 2d ¶¶ 91, 93–100.

Contemporaneous with Keener's execution of the Agreement, he also executed the Proceeds Authorization Letter, allowing $40,000 of the proceeds of the Sabal Palm loan to be paid

directly to Plaintiff "which constitutes partial payment of the financial advisory fee due [Plaintiff]." SOF ¶ 28. That was the initial act of ratification. Also, subsequent to signing the Agreement, Keener instructed his accountants to schedule the liability from Defendant AII to Plaintiff as a note payable in the amount of $1,160,000. SOF ¶ 45. Accordingly, the 2018 and 2019 balance sheets for Defendant AII show a note payable to Krakower as a liability in the amount of $1,160,000. SOF ¶ 46. Defendant AII's 2018 and 2019 federal tax declarations, under "Schedule L." declare the note payable to Krakower as a long-term liability in the amount of $1,160,000. SOF ¶ 47. Through these acts, Defendants continually ratified the Agreement as it was executed by their own principal Jody Keener, long after the dismissal of the Chapter 7 Trustee. The ratification is sufficient to cure any lack of authority at the time Keener executed the Agreement. "Where a principal ratifies the unauthorized acts of another with full knowledge of the facts, he is bound." *Transmarittina Sarda Italnavi Flotte Ruiniti S.p.A. v. Foremost Ins. Co*., 482 F. Supp. 110, 116 (S.D.N.Y. 1979).

In New York, the simple passage of time without the principal having repudiated the contract, is sufficient for ratification. "Where a party does not promptly repudiate [a] contract or release, he will be deemed to have ratified it." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir.2001) (internal quotation marks omitted). In the instant case, Defendants waited years to decide that Keener had no authority to bind them. This was well after Defendants received the benefit of Plaintiff's services, as well as the multimillion-dollar loan that resulted. Defendants ratified the Agreement "[b]y intentionally accepting benefits under the contract, by remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it, or by acting upon it, performing under it, or affirmatively acknowledging it." *In re Lehman Bros. Holdings Inc.,* 541 B.R. 551, 572 (S.D.N.Y. 2015) (citations omitted). The Supreme Court described the concept eloquently in the 1985 decision in *Simmons v. Burlington*:

6

> When a party, with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time, and knowingly permits the other party to deal with the subject-matter under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence; and the transaction, although originally impeachable, becomes unimpeachable in equity.
>
> *Simmons v. Burlington*, C.R. & N.R., Co., 159 U.S. 278, 291–92, 16 S. Ct. 1, 6, 40 L. Ed. 150 (1895)

Even if Defendants did not affirmatively ratify the Agreement, they did so through years of omission.  Defendants' Opposition does not point to a single prior instance of repudiation of the Agreement, despite the fact that Keener and Defendants had clear knowledge of its existence.

### d.  *Quasi-Estoppel Bars Defendant AII From Adopting a Factual Position that is Contrary to a Position Previously Taken on its Tax Return*

In this District, Courts have regularly found that quasi-estoppel bars a party from adopting a factual position in court that is contrary to a position previously taken on a tax return.  *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 704 F. Supp. 2d 177, 193 (E.D.N.Y. 2010) citing *Mahoney–Buntzman v. Buntzman*, 12 N.Y.3d 415, 422, 881 N.Y.S.2d 369, 909 N.E.2d 62 (N.Y.2009).  Defendant AII's 2018 and 2019 federal tax declarations, under "Schedule L." declare a note payable to Krakower as a long-term liability in the amount of $1,160,000.  SOF ¶ 47.  This reference can only refer to the obligation to pay Plaintiff, Krakower's company, pursuant to the Agreement.  Federal tax returns are deemed to be sworn statements under the penalty of perjury. 26 U.S.C. § 6065.  The theory of quasi-estoppel prevents AII from now asserting that the Agreement, which formed the basis of that scheduled liability, is void.

### e.  *Equitable Estoppel Bars Defendants from Asserting the Lack of Authority Defense*

Even if Keener never had authority to execute the Agreement, Defendants are now estopped from asserting lack of authority under the theory of equitable estoppel.  Under New York law, equitable estoppel requires a showing of "(1) An act constituting a concealment of facts or a

false misrepresentation; (2) An intention or expectation that such acts will be relied upon; (3) Actual or constructive knowledge of the true facts by the wrongdoers; (4) Reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment." *Special Event Entertainment v. Rockefeller Ctr.*, 458 F.Supp. 72, 76 (S.D.N.Y.1978) (citations omitted).   The first factor is present in the instant case if Keener, Gainer, and Collins truly believed that Keener lacked authority to sign the Agreement, but had Keener sign it anyway. When Keener executed the Agreement, he impliedly represented that he had the authority to do so. "Under the doctrine of tortious misrepresentation and assurances of payment, if the person who falsely claims to have power to bind another knows that the claim is untrue, the person has made a fraudulent misrepresentation and is subject to liability to those who, justifiably relying on the representation, suffer a loss as a consequence." *DePetris & Bachrach, LLP v. Srour*, 71 A.D.3d 460, 462, 898 N.Y.S.2d 4, 6 (2010) citing Restatement (Third) of Agency § 7.01 [2006].

Looking at the second factor, Defendants, through their counsel Kevin Collins, clearly executed and delivered the Loan Documents and the Agreement with the expectation that Plaintiff would rely on that (purported) misrepresentation.  Why else would Keener execute and deliver a document that he had no authority to sign?   The third factor requires that the wrongdoers have actual or constructive knowledge of the true facts.   Of course, Keener's bankruptcy counsel Robert Gainer, who now argues that Keener had no authority to sign the Agreement, would have known that fact at the time.   Defendants' counsel Kevin Collins was clearly aware of Keener's bankruptcy as well.   Defendants, through their principal Jody Keener, were well aware of the pendency of Keener's bankruptcy and the role of the Chapter 7 Trustee.  Defendants and their counsel were in the best position to know the true facts of Keener's authority (or lack thereof).

The final factor examines Plaintiff's justified reliance on the executed Agreement. Why wouldn't Plaintiff rely on a written contract that was negotiated, then executed and delivered,

following a court order, with the participation of three different law firms?   Krakower was totally unaware of any requirement to seek approval for the loan from the Bankruptcy Court.  ASOF ¶ 15. Plaintiff has been relying on the Agreement for over three years now, waiting for the full repayment of the Sabal Palm loan to ask for the remainder of its fee from Defendants.  As stated in the Agreement, Plaintiff has fully performed on that contract, and now relies on that document to substantiate the agreed payment by Defendants of the remainder of the fee.  Plaintiff has suffered a loss as a consequence because it never got its fee. Under the theory of equitable estoppel, Defendants are estopped from arguing that the Agreement is void or *ultra vires.*

### f.   *Under New York Law, Having Directly Benefitted from the Agreement, Defendants Cannot Avail of Lack of Authority as an Affirmative Defense*

Under New York law and the theory of unjust enrichment, in order to rescind or repudiate a contract on the basis of impossibility, *ultra vires,* lack of authority or mutual mistake, the party seeking to rescind must not have retained the benefit under the contract. *Ross Univ. Sch. of Med., Ltd. v. Brooklyn-Queens Health Care, Inc*., No. 09-CV-1410 KAM, 2012 WL 6091570, at *15 (E.D.N.Y. Dec. 7, 2012) citing *Univ. of Minn. v. Agbo,* 176 Misc.2d 95, 673 N.Y.S.2d 812, 813 (2d Dep't 1998) (rejecting impossibility defense because "[d]efendant cannot keep the benefit without paying for it"); *Bank of N. Am. v. Shapiro,* 31 A.D.2d 465, 298 N.Y.S.2d 399, 401 (1st Dep't 1969) (rejecting corporation's claim that loans with plaintiff bank were unauthorized, where corporation made use of loans); *Woodard v. Southampton Fed. Sav. & Loan Ass'n,* 161 N.Y.S.2d 522, 526 (N.Y.Sup.Ct.1957) ("[I]t is now well settled that a corporation cannot avail itself of the defense of *ultra vires* where the contract has been, in good faith, fully performed by the other party, and the corporation has had the benefit of the performance of the contract.").

Here, Defendants received the benefit of Plaintiff's services (as evidenced in the Agreement), and also received the benefit the loan from Sabal Palm.  SOF ¶¶ 15-18.  They got the money.  The only performance left on the Agreement is for Defendants to pay the Remaining Fee

Amount.  SOF ¶ 43.  Defendants would be unjustly enriched if they would be permitted to receive and retain the benefit of Plaintiff's services, but then assert lack of authority to excuse payment.

### g. Under New York Law, the Subjective Intent of the Parties is Irrelevant When Examining an Unambiguous Contract

Defendants complaint that there was no "meeting of the minds on the Agreement." Defs.' Opp. at 2.   But, with unambiguous contracts, a party's subjective intent and understanding of the terms is irrelevant.  *HOP Energy, L.L.C. v. Loc. 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012), citing *Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002) ("Under New York law, a court must give full effect to unambiguous contract terms."); *Chimart Assocs. v. Paul,* 66 N.Y.2d 570, 572, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986) ("Extrinsic evidence cannot be used to vary the terms of a facially unambiguous contract").  The Agreement is simple and unambiguous. By its own language, the Agreement evidences the Parties' intent to be bound.  Agreement at 2.  Defendants' assertions otherwise are patently false.  ASOF ¶ 14, with response.   Defendants' ridiculous assertion is also, under New York law, immaterial. This Court must give full effect to the Agreements unambiguous terms, no matter Defendants' subjective intent.

## II.   <u>CONCLUSION</u>

For the reasons above, the Court should grant Plaintiff's Motion, entering summary judgment against Defendants in the amount of $1,085,000.

Dated:  Scarsdale, New York, May 6, 2022

SARACHEK LAW FIRM

/s/ Zachary Mazur
Zachary E. Mazur, (NY Bar No. 5706726)
670 White Plains Road #PH
Scarsdale, New York 10583
joe@saracheklawfirm.com  (646) 517-5420
zachary@saracheklawfirm.com  (646) 519-4396
*Attorneys for Plaintiff*

10