UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
CONTINENTAL PLANTS GROUP, LLC,          :
                                        :
        Plaintiff,                      :
                                        :
                                        :          21-cv-8677 (JSR)
                -v-                     :
                                        :          MEMORANDUM ORDER
ALPHA INTERNATIONAL, INC., et al.,      :
                                        :
        Defendants.                     :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

    This breach of contract case concerns whether the Agreement
between the parties -- under which defendant corporations were to
pay plaintiff Continental Plants Group, LLC ("CPG") a $1,125,000
fee for services related to securing financing -- was valid.
Defendants paid CPG $40,000, but then refused to make further
payment. CPG brought suit in this Court seeking the remaining
$1,085,000.

    Now before the Court are the parties' cross motions for
summary judgment. ECF Nos. 26, 30. The motions are fully briefed
and the Court heard oral argument on May 16, 2022. As the Court
stated by "bottom-line" order dated May 18, 2022, see ECF No. 43,
the Court grants summary judgment in favor of plaintiff CPG. This
Memorandum Order confirms that ruling and sets forth the reasons
for it.

**BACKGROUND**

The following facts are taken from the parties' Rule 56.1 Statements, Counterstatements, declarations, exhibits, and affidavits, and are undisputed unless otherwise indicated.

The Parties

CPG is a New York limited liability company that provides financial advisory and consulting services; its sole member is Reid Krakower. Defendants Alpha International, Inc. ("AII"), J. Lloyd International, Inc. ("JLII"), and J.K. Manufacturing Co. ("JKMC") are Iowa corporations with principal places of business in Cedar Rapids Iowa, whose president is Jody Keener; the remaining defendant, J.K. Properties LC ("JKP"), is an Iowa limited liability company whose manager is Jody Keener. Keener was the sole owner of all the defendant companies during the relevant time period. Keener has been in the toy business for roughly thirty years. JLII and JKMC are involved in the licensing, distribution, and manufacturing of children's toys.

The Bankruptcy Proceeding & The Loans

When Keener went through a divorce, it negatively impacted his business. In addition, one of Keener's business partners and creditors, Super Wings, sued Keener to enforce a personal guarantee he had provided in connection with a loan. In July 2014, Keener as an individual filed for Chapter 11 bankruptcy in the Northern

District of Iowa. (Defendants were not parties to the bankruptcy proceedings.)

The bankruptcy proceedings dragged on for years. On April 5, 2017, after Keener defaulted on a mediated stipulation to pay his main creditors, the Bankruptcy Court appointed Renee Hanrahan as a Chapter 11 Trustee. On April 10, 2018, pursuant to a motion from one of Keener's creditors, the bankruptcy was converted to a liquidation of Keener's assets under Chapter 7; Hanrahan became a Chapter 7 Trustee.

In the months leading up to June 28, 2018, CPG assisted Keener in relation to the bankruptcy. CPG characterizes this as the provision of financial advisory and consulting services, while defendants assert that CPG merely provided Keener with an introduction to Eric Rosen and Sabal Palm Consulting, LLC ("Sabal Palm"). Sabal Palm initially loaned $3.5 million to the defendants on or around June 27, 2018, which the defendants in turn loaned to Keener, allowing him to pay his creditors. Sabal Palm went on make subsequent loans to the defendants, totaling between $5.8 and $5.9 million.

The negotiations for the initial loan were extensive. Keener and the defendant companies were represented by counsel and other professionals during the negotiations, which were conducted at arm's length. The terms and conditions described in the loan

documents were fair, reasonable, and agreed to after good-faith negotiations between the parties.

The initial loan was conditioned on the approval of the Bankruptcy Court. On or around June 13, 2018, Keener filed a motion with the Bankruptcy Court to authorize the borrowing from Sabal Palm; in this motion, Keener requested that the Court authorize him, as an officer of each of the defendant companies, "to execute and deliver the necessary loan documents, notes, security documents, and mortgages (the 'Loan Documents'), to borrow the sum of $4,000,000 from Sabal Palm and to grant Sabal Palm first priority liens and security interests in and to all assets" of each of the defendant companies. On June 16, 2018, the Bankruptcy Court entered an interim order granting the motion and empowering Keener "as an officer or manager of each of the Defendants, to execute and deliver each of the Loan Documents." None of the referenced "Loan Documents" were filed with the Bankruptcy Court.

After the entry of the interim order, Keener, assisted by his counsel, signed the Loan Documents on June 28, 2018. The parties dispute precisely which instruments were included in the "Loan Documents" as referred to in the interim order: the parties agree as to twenty-two of them, but defendants assert that two -- a "Trademark Side Letter to Loan Agreement" and "Compensation arrangements letter" -- were not among the Loan Documents. Keener's

attorney retained copies of all twenty-four documents and delivered the originals to counsel for Sabal Palm. On June 29, 2018, the defendant companies executed a side letter authorizing Sabal Palm to pay certain of their creditors directly using the initial loan proceeds, including paying CPG $40,000, "which constitutes partial payment of the financial advisory fee due [CPG]." Sabal Palm provided the funds, which allowed Keener to pay his creditors. Keener's bankruptcy was eventually dismissed.

The Agreement

As mentioned above, in the months leading to June 28, 2018, CPG assisted Keener in relation the bankruptcy, though the parties characterize the scope of the assistance differently. Regardless of the precise scope of the services CPG provided, it is not disputed that in or around April 2018, CPG proposed a fee structure that would involve an initial retainer fee, followed by ongoing monthly consulting fees, a significant "success fee" in the event that Sabal Palm provided funding, as well as reimbursement of CPG's expenses. Defendants do not dispute that there were negotiations between Keener and CPG regarding a different fee structure, but dispute that there was an agreement for defendants to pay a flat fee of $1.125 million, with CPG's expenses included, citing to Keener's affidavit and a June 22, 2018 email from Keener to Krakower.

Keener's attorney, Kevin Collins, was in possession of an original signed version of the Agreement before he sent it to Sabal Palm's counsel with the rest of the signed Loan Documents. In the list of the Loan Documents, Collins's office refers to the Agreement as "19. Compensation arrangements letter-signed." ECF No. 28, Ex. 7 (Ex. G) at Nyemaster 0001.

On October 8, 2018, Keener met with his accountants, who scheduled liability from defendant AII to CPG as a note payable in the amount of $1,160,000. The 2018 and 2019 balance sheets for AII show the note payable to Krakower as a liability in the amount of $1,160,000. The 2018 and 2019 federal tax declarations for AII declare the note payable to Krakower as a long-term liability in the amount of $1,160,000.

Keener admitted at his deposition that he understood the Agreement to be one of the "Loan Documents," and believed and believes that he had authority to sign the Agreement.

CPG filed its complaint in this action on October 22, 2021. ECF No. 1. On February 7, 2022, CPG filed an Amended Complaint that was identical to the Complaint, but attached an Exhibit A, the Agreement, that excluded two pages plaintiff termed "extraneous." ECF No. 16 at 1 n.1.[1] To resolve certain discovery

---

[1]     This document was filed more than 21 days after defendants' Answer, properly with leave of the Court. See ECF No. 17.

disputes, on March 9, 2022, the parties submitted a joint stipulation that, without any admission as to the validity, authenticity, or completeness of the Agreement itself, the conditions precedent to payment of the fee shall be deemed to have occurred, ECF No 18; the Court signed and so-ordered the stipulation on March 14, 2022, ECF No. 19. The parties have now filed cross-motions for summary judgment. See ECF Nos. 26, 30.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party bears the burden of demonstrating the absence of any genuine dispute as to any material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In determining whether there is a genuine dispute as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." Liberty Lobby, 477 U.S. at 255. The same standards apply when the parties file cross-motions for summary judgment. Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d

Cir. 2001) ("[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.") (internal citations omitted)).

## DISCUSSION

The Court finds that the Agreement is not ambiguous and on its face constitutes a binding and valid contract. Moreover, even assuming arguendo that the Agreement was ambiguous and the Court was thus obliged to consider extrinsic evidence, summary judgment in favor of CPG would still be warranted because the extrinsic evidence uniformly supports the conclusion that the Agreement is binding and valid and that Keener had the authority to sign it.

Under New York law, a breach of contract claim requires a plaintiff to prove that there was (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages. See First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998). On these cross-motions for summary judgment, the parties' sole dispute is as to whether there was, in fact, a binding agreement. The parties do not dispute that

Keener signed the Agreement; instead, they dispute whether the Agreement was among the "Loan Documents" referenced in the June 16, 2018 Bankruptcy Court interim order. Defendants further assert that the parties never intended for the Agreement to take effect, but cite to no evidence that supports that assertion as a factual matter. ECF No. 35 at 4.

CPG attached to its amended complaint, as Exhibit A, the Agreement, signed by Keener on behalf of the four defendants, as well as by Sabal Palm and CPG. ECF No. 16-1 at 4-6. Defendants argue that the Agreement was not valid because it was neither signed by the bankruptcy Trustee nor approved by a Bankruptcy Court order. Keener was in Chapter 7 bankruptcy proceedings during the relevant period, and the ownership of the defendants in this suit (non-debtor entities in the bankruptcy proceedings) was held at the relevant times by the bankruptcy trustee. See 11 U.S.C § 541. CPG argues that the Agreement was approved by an order of the Bankruptcy Court, because the Bankruptcy Court interim order of June 16, 2018 authorized Keener to sign the "Loan Documents" to execute the Sabal Palm loans. The interim order did not define the "Loan Documents," nor were any of the "Loan Documents" submitted to the Bankruptcy Court.

The Agreement is unambiguous. It states that the defendants "agree to pay CPG a fee in the amount of $1,125,000" for "the

investment banking and financial advisory services rendered to date by CPG" on behalf of the defendants, and that "[t]his letter shall be binding upon the parties . . . ." ECF No. 16-1 at 3. Keener signed it four times, on behalf of each of the four defendants. The defendants' arguments that Keener never intended for the Agreement to take effect or that it was a placeholder are thus unavailing.

The Agreement itself states that the "capitalized terms used herein," which included the "Loan Documents," "shall have the meanings assigned to them in the Loan Agreement" -- the main Sabal Palm Term Loan Agreement. ECF No. 16-1 at 1. The main Sabal Palm Term Loan Agreement defined "Loan Documents" as meaning "collectively, (i) this Agreement, (ii) the Term Note, (iii) the Security Documents, (iv) each Guarantee with respect to the Obligations and (v) all agreements, documents and/or instruments at any time executed in connection with or related to any of the foregoing, in each instance, as amended." ECF No. 36-2 (Supp. Mazur Decl., Ex. U) at 13. By its plain terms, then, the Agreement is one of the Loan Documents, as it plainly qualifies as an agreement, document and/or instrument executed in connection with or related to the Loan Agreement, Term Note, and Security Documents. It was signed on June 28, 2018, at the same time as all of the other undisputed Loan Documents.

Nothing on the face of the Agreement indicates that it is not one of the Loan Documents: it refers to the Loan Agreement and "each of the other Loan Documents," to the payment of $40,000 "following the execution and delivery of the Loan Documents," and to payment being made "in full accordance with the terms of the Loan Documents" -- none of which excludes the Agreement itself from the Loan Documents. Id. at 1. Because the Agreement is not ambiguous, the subjective intent of the parties or understanding of the contract's terms are irrelevant. See HOP Energy, L.L.C. v. Loc. 553 Pension Fund, 678 F.3d 158, 162 (2d Cir. 2012) ("Extrinsic evidence cannot be used to vary the terms of a facially unambiguous contract." (citing Chimart Assocs. v. Paul, 489 N.E.2d 231 (N.Y. 1986)).[2]

_____

[2]     Furthermore, in assessing the validity of a contract, a court will not consider parol evidence if the contract is integrated, i.e., if the writing embodies all of the mutual rights and obligations of the parties. See Adler & Shaykin v. Wachner, 721 F. Supp. 472, 476 (S.D.N.Y. 1988) (citing Mitchell v. Lath, 160 N.E. 646 (N.Y. 1928); see also Battery S. S. Corp. v. Refineria Panama, S. A., 513 F.2d 735, 738 n.3 (2d Cir. 1975) ("[U]nder New York law a contract which appears complete on its face is an integrated agreement as a matter of law."). The Agreement contains a standard integration clause. See ECF No. 16-1 at 3 ("This letter sets forth the entire agreement between the parties with respect to the matters addressed herein, supersedes all prior communications, written or oral, with respect hereto, and may not be amended, supplemented, or modified except in a writing signed by the parties hereto . . . ."). Unless there is evidence of fraud or mutual mistake, which neither party argues is the case here, the parol evidence rule "operates to exclude evidence of all prior or

Even assuming, contrary to fact, that the Agreement were ambiguous, the extrinsic evidence uniformly supports the conclusion that the Agreement was binding and valid, and specifically that Keener had the authority to sign it.

Defendants argue that there was "no meeting of the minds on the Agreement," pointing to an email Keener sent to Krakower six days before the Agreement was signed and to Keener's affidavit. Even viewed in the light most favorable to the defendants, this evidence is insufficient to create a genuine dispute of material fact.[3]

---

contemporaneous negotiations between the parties offered to contradict or modify the terms of their writing. See Marine Midland Bank-Southern v. Thurlow, 425 N.E.2d 805, 807-08 (N.Y. 1981). The defendants' reliance on communications between the parties in advance of the Agreement being signed is thus unavailing.

[3]   Keener's self-serving assertion in his affidavit that the Agreement "does not contain a mutually agreed to benefit and burden, or the terms agreed, as between the Defendants and Plaintiff" is not sufficient to create a genuine dispute of material fact for summary judgment purposes, when it is supported by no other evidence. See, e.g., Kobrand Corp. v. Abadia Retuerta S.A., No. 12-CV-154 (KBF), 2012 WL 5851139, at *4 (S.D.N.Y. Nov. 19, 2012) ("[S]elf-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment." (citing BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.-Conn., 77 F.3d 603, 615 (2d Cir. 1996)). Neither does the June 22, 2018 email refute the assertion: it reflects that there were negotiations, but does not indicate that the parties did not reach an agreement six days later, as evidenced by Keener's signature on the Agreement. Defendants also cite to a 2022 email purporting to capture text messages between Krakower and Rosen, ECF No. 40-2 (Def Supp Ex. I), as well as to a clip of

Instead, the extrinsic evidence uniformly supports the conclusion that there is no genuine issue of material fact as to the validity of the Agreement or as to Keener's authority to sign it. The Agreement was signed on June 28, 2018, at the same time as all of the other undisputed Loan Documents, and Keener's own counsel included it in the package of 24 instruments that he termed the "Loan Documents" and sent to counsel for Sabal Palm. That package included a cover letter with the subject line "RE: Keener-Alpha International Loan documents" and listed the 24 different documents by name, including the Agreement, identified as "19. Compensation arrangements letter-signed."

The parties -- including Keener's counsel and Keener himself -- understood the Agreement to be among the Loan Documents. As discussed above, Keener's counsel at the time included the Agreement among the Loan Documents and labelled them as such when he sent them to Sabal Palm. Keener admitted at his deposition that he understood the Agreement to be one of the "Loan Documents."

---

an email from Krakower to Keener and others, ECF No. 33-6 (Def. Ex. F). It is unclear on the face of these exhibits how their contents support any assertion about a lack of mutual assent and intent to be bound, and even taken collectively, they fail to create a genuine dispute of fact. Neither does defendants' citation to Krakower's deposition testimony support such an assertion or create a genuine issue of material fact. ECF No. 33-5 (Def. Ex. E) at 81-83.

Furthermore, the day after signing the Agreement, the defendant companies executed a side letter authorizing Sabal Palm to, among other things, pay CPG $40,000, "which constitutes partial payment of the financial advisory fee due [CPG]." Next, on October 8, 2018, Keener met with his accountants, who scheduled liability from defendant AII to CPG as a note payable in the amount of $1,160,000. The 2018 and 2019 balance sheets for AII show the note payable to Krakower as a liability in the amount of $1,160,000. The 2018 and 2019 federal tax declarations for AII declare the note payable to Krakower as a long-term liability in the amount of $1,160,000. Such evidence indicates that the Agreement was binding, and further demonstrates that (beyond the fact that at no point prior to filing an answer in this case did the defendants repudiate the Agreement), the defendants took affirmative steps to treat the Agreement as binding and valid.

The Agreement is unambiguous and there is no genuine dispute of material fact that the Agreement is binding and valid as one of the Loan Documents authorized by the June 16, 2018 Bankruptcy Court interim order. Furthermore, even assuming, contrary to fact, that the Agreement were ambiguous, the extrinsic evidence uniformly supports the conclusion that the Agreement was binding and valid, and specifically that Keener had the authority to sign it.

**CONCLUSION**

For the aforementioned reasons, and as the Court stated by bottom-line order dated May 18, 2022, see ECF No. 43, the Court grants summary judgment in favor of plaintiff CPG. The Clerk of Court is directed to enter judgment and close the entries at docket numbers 26 and 30.

SO ORDERED.

Dated:   New York, NY

June 10, 2022                          JED S. RAKOFF, U.S.D.J.